[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11267
Non-Argument Calendar
_____

D.C. Docket No. 7:11-cr-00035-HL-TQL-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER THORNTON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(July 3, 2013)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

After a guilty plea, Peter Thornton appeals his conviction and 188-month

sentence for possessing with intent to distribute 28 grams or more of cocaine base

("crack cocaine"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii).  After review, we affirm.

## I.    BACKGROUND FACTS

### A.    Thornton's Offense and Guilty Plea

On January 1, 2007, law enforcement officers found a paper bag inside Thornton's car containing 109 grams of crack cocaine, 75 grams of powder cocaine, and $1,450 in cash.  Although Thornton was not present in the car at the time, the packaging materials inside the paper bag contained Thornton's fingerprint.  On several subsequent occasions, law enforcement agents used a confidential informant to purchase cocaine from Thornton and his associates.

In 2011, Thornton was indicted for 1 count of possession with intent to distribute more than 28 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count 1), and 5 counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts 2 through 6).

In his plea agreement, Thornton agreed to plead guilty to Count 1 (the crack cocaine offense) and the government agreed, among other things, to accept the plea in full satisfaction of all possible criminal charges against Thornton.

At a change of plea hearing in November 2011, Thornton indicated that he had met with his appointed defense attorney, Mickey Johnson, and had sufficient

time to talk with Johnson about the case. Thornton stated that he was satisfied with Johnson's services, that they had discussed the facts of the case and the range of sentences, and that he (Thornton) wished to plead guilty.

When the district court asked Thornton if he and Johnson had discussed the Sentencing Guidelines, however, Thornton indicated that they had not. Attorney Johnson similarly indicated that he was not sure to what extent they had discussed the Guidelines. The district court then continued the plea hearing until after Johnson had explained the Guidelines to Thornton.

When the plea hearing resumed in December 2011, Thornton assured the district court that he had discussed the Sentencing Guidelines with attorney Johnson. Thornton affirmed that he understood what the Guidelines were, how they operated, and that the district court was not required to sentence him pursuant to the Guidelines, but could impose any sentence permitted by statute. Thornton indicated that he and Johnson had tried to estimate what the sentence would be, but that Thornton understood that he could not rely on that estimate.

The district court accepted Thornton's guilty plea, finding that there was a factual basis for the plea, that Thornton was guilty, and that he entered the plea freely and voluntarily.

## B.    Presentence Investigation Report

3

The Presentence Investigation Report ("PSI") initially assigned Thornton a base offense level of 28 under U.S.S.G. § 2D1.1(a)(3) and (c)(6). The PSI then classified Thornton as a career offender under U.S.S.G. § 4B1.1 because he had (1) a 1990 conviction for a drug offense (selling cocaine) and (2) a 1991 conviction for a crime of violence (kidnapping).

As to the 1990 conviction, Thornton was convicted in state court for selling cocaine on September 25, 1990, and was sentenced to four years of imprisonment and eight years of probation. On March 4, 1991, Thornton was released on parole.

Less than a year later, on December 13, 1991, Thornton's parole was revoked because he was convicted of several other crimes, including kidnapping. He was sentenced to 15 years for the kidnapping offense and remained incarcerated on both the drug and kidnapping convictions for nearly 7 years, until he was paroled again in September 1998. Thornton's sentence for the drug offense expired in March 1999, and his sentence for the kidnapping offense expired in March 2002.

Thornton's career-offender classification resulted in a base offense level of 34, pursuant to U.S.S.G. § 4B1.1(b)(2), and automatically placed him into a criminal history category of VI. After a 3-level reduction for acceptance of responsibility, Thornton's total offense level became 31, which, combined with his

4

criminal history category of VI, yielded an advisory guidelines range of 188 to 235 months in prison.

Thornton's defense attorney, Johnson, did not file any objections to the PSI and did not submit a sentencing memorandum.

Prior to sentencing, however, Thornton himself wrote a pro se letter to the district court, in which he asserted that Johnson was ineffective in advising him about the guidelines range. Thornton's letter alleged, essentially, (1) that Johnson had advised Thornton that his guidelines range would be 63 to 78 months based on his criminal history; and (2) that Thornton was unaware that he would be classified as a career offender based on a 1990 drug conviction that occurred more than 15 years before the present offense. Thornton's letter asserted that Thornton would not have pled guilty "to being a career offender" and that Johnson's incorrect guidelines estimate rushed him (Thornton) into pleading guilty.

## C.    Sentencing

At the sentencing hearing, the district court inquired into Thornton's allegations of ineffective assistance, but did not place either defendant Thornton or attorney Johnson under oath. Thornton told the district court that he was misled into pleading guilty because he thought his guidelines range was 63 to 78 months. Johnson responded that Thornton had not mentioned the kidnapping conviction in their earlier discussions, and that Johnson's criminal record check did not reveal

5

that conviction.  Thus, Johnson had "no way of advising [Thornton] that he might be a career offender" before the PSI was issued.  Thornton then admitted that he had not told Johnson about his kidnapping conviction.

The district court "rejected" Thornton's complaint about Johnson, concluding that Johnson had represented him "properly and effectively."  The district court acknowledged that Johnson "made a mistake" by not informing Thornton of a possible career offender classification, but stated that "it was an honest mistake based on the fact that [Johnson] didn't have all the information about [Thornton's] case, information that [Thornton] possessed and didn't give to [Johnson]."  The district court then sentenced Thornton to 188 months in prison, the low end of the guidelines range, to be followed by 5 years of supervised release.

Thornton filed a pro se notice of appeal, in which he alleged that his attorney Johnson had been ineffective.  This time, Thornton asserted that Johnson knew about the kidnapping charge before the guilty plea, but advised Thornton that the charge did not show up in other documents related to his criminal history.  Thornton also noted that his 1990 drug conviction was over 15 years old.

This Court denied attorney Johnson's motion to withdraw as counsel, and Johnson filed a brief for Thornton on appeal.

## II.  DISCUSSION

### A.    Ineffective Assistance of Counsel

In his counseled brief on appeal, Thornton argues that he received ineffective assistance of counsel because his attorney, Johnson, failed to inform him that he might be classified as a career offender.

We will not consider claims of ineffective assistance of counsel on direct appeal except "in the rare instance when the record is sufficiently developed." United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir. 2005).  Rather, the "preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion."  United States v. Patterson, 595 F.3d 1324, 1328 (11th Cir. 2010); see also Massaro v. United States, 538 U.S. 500, 504-05, 123 S. Ct. 1690, 1694 (2003) (stating that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" because the trial record on direct appeal is often "incomplete or inadequate" for the purpose of litigating such claims).

In this case, the record is not sufficiently developed for us to review Thornton's claims of ineffective assistance of counsel.  Although Thornton's claim was briefly discussed at the sentencing hearing, neither Thornton nor Johnson was under oath at that time, and neither submitted a sworn statement either then or now.  In this light, we decline to address Thornton's ineffective assistance claim on

7

direct appeal, and we affirm his conviction.  See Massaro, 538 U.S. at 504-05, 123 S. Ct. at 1694.

## B.    Career Offender Designation

Thornton next argues that his classification as a career offender was erroneous because one of his predicate felony convictions, the 1990 drug offense, occurred more than 15 years before the present offense.

A defendant qualifies as a career offender under the Sentencing Guidelines if, among other things, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a)(3).[1] "Prior felony convictions under section 4B1.1 are counted using the definitions and instructions for computing criminal history in section 4A1.2."  United States v. Shannon, 449 F.3d 1146, 1148 (11th Cir. 2006) (per curiam); U.S.S.G. § 4B1.2, comment. (n.3).

According to § 4A1.2, "[a] prior conviction is 'any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense.'" Shannon, 449 F.3d at 1148 (quoting § 4A1.2(a)(1)).  A prior sentence counts under § 4B1.1 if it resulted in "imprisonment exceeding one year and one month" and "was imposed within fifteen years of the defendant's commencement of the instant offense."  U.S.S.G. § 4A1.2(e)(1).  A sentence also counts if it was imposed more

---

[1]"We review de novo a district court's decision to classify a defendant as a 'career offender' under section 4B1.1"  United States v. Whitson, 597 F.3d 1218, 1220 (11th Cir. 2010).

than 15 years before the current offense, but the incarceration extended into the applicable 15-year period.  Id.; Shannon, 449 F.3d at 1148.

The revocation of probation or parole can impact the time period in which sentences are counted under § 4A1.2(e)(1).  Shannon, 449 F.3d at 1148.  In the case of a prior revocation of probation or parole, the Guidelines direct the district court to "add the original term of imprisonment to any term of imprisonment imposed upon revocation."  U.S.S.G. § 4A1.2(k)(1); Shannon, 449 F.3d at 1148.  Thus, for career offender purposes, the district court "ordinarily should count a conviction that is imposed, and on which the defendant is paroled, outside the [15-year] window, when the defendant later—within the window—is incarcerated for breaching the conditions of his parole."  Shannon, 449 F.3d at 1148 (internal quotation marks omitted).

Thornton committed the present offense on January 1, 2007, and the 15-year window for counting his prior convictions opened in 1992.  Thornton was sentenced for the prior drug offense in September 1990 and paroled in March 1991—all outside the 15-year window.  However, he was sent back to prison for a parole violation in December 1991 and remained incarcerated for nearly seven years, until September 1998.  Thus, Thornton's 1990 drug conviction resulted in incarceration after 1992, within the 15-year window, and the district court properly

9

counted that conviction as a predicate felony for career offender purposes.  <u>See</u> U.S.S.G. § 4A1.2(e)(1); <u>Shannon</u>, 449 F.3d at 1148.

In light of the foregoing, we affirm Thornton's 188-month, within-guidelines sentence.

**AFFIRMED.**